

FILED

MAY - 7 2014

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

LARS

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re | ) Case No. 13-90382-E-7 |
| | ) |
| MICHAEL ROBERT CARSON, | ) |
| | ) |
| Debtor. | ) |
| _____ | ) |
| GRACIELA TAIPE, | ) Adv. Proc. No. 13-9016 |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MICHAEL R. CARSON, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**MEMORANDUM OPINION AND DECISION**

Graciela Carson, the Plaintiff, filed the present Motion requesting attorney fees and costs of $10,562.00 in fees and expenses of $363.46 in this Adversary Proceeding. Evidence in support of this Motion is for the period May 24, 2013, through December 31, 2013. Jurisdiction for this Adversary Proceeding and the present Motion exist pursuant to 28 U.S.C. §§ 1334 and 157(a), and the referral of bankruptcy cases and all related matters to the bankruptcy judges in this District. ED Cal. Gen Order 182, 223. This Adversary Proceeding and present Motion are core matters arising under Title 11, including 11 U.S.C. §§ 523. 28 U.S.C. § 157(b)(2)(I).

## BACKGROUND OF ADVERSARY PROCEEDING
## AND UNDERLYING CLAIM

As with many contests in bankruptcy court, the issues in this Adversary Proceeding are preceded by a long history of conflicts between the Plaintiff and Michael Carson, the Defendant (Plaintiff's ex-husband). Exercising judicial literary license, the State Court proceeding and this Adversary Proceeding demonstrate that, "Hell hath no fury like a spouse divorced."[1]

**State Court Judgment**

The underlying claim which is the subject of this Adversary Proceeding is a judgment issued by the California Superior Court, County of Contra Costa, Family Law Division (the "State Court"), Case No. D10-04543 ("Family Law Proceeding"). The State Court issued a judgment on January 24, 2013, in the Family Law Proceeding determining the respective responsibilities of Plaintiff and Defendant.[2] The judgment included a $15,000.00 award of attorneys' for Plaintiff pursuant to California Family Code § 271. In opposing the present Motion, Defendant admits that he was "sanctioned" by the State Court pursuant to this Family Code § 271 for his conduct in those proceedings.[3] The judgment in the Family Law Proceeding provides that Plaintiff is to pay Defendant $452.00 per month for child support, and that the $452.00 owed to Defendant is to be offset against Defendant's obligation to pay the

---

[1] "Heav'n has no Rage, like Love to hatred turn'd, Nor Hell a Fury like a Woman scorn'd." William Congreve, *The Mourning Bride*, 1697.

[2] Exhibit A, Dckt. No. 83.

[3] Opposition, pg. 2: 11, 13, 17, Dckt. 89; Supplemental Opposition, pg. 2:11, 13, 17.

$15,000.00 in attorneys' fees.[4]

## CONDUCT OF THE PARTIES AND LITIGATION
## IN THE PRESENT ADVERSARY PROCEEDING

For the Plaintiff, Defendant, and their respective attorneys, concluding that 11 U.S.C. § 553 prevented the setoff rights of Plaintiff from being "discharged" in Defendant's Chapter 7 bankruptcy case did not come easy. On April 10, 2013, Plaintiff, in *pro se*, filed the Complaint in this Adversary Proceeding to Determine the Dischargeability of Debt under 11 U.S.C. § 523(a)(5).[5] Plaintiff sought to have the $15,000.00 attorneys' fees awarded as sanctions pursuant to California Family Code § 271 determined nondischargeable pursuant to 11 U.S.C. § 523(a)(5) as a domestic support obligation.

**Motion to Dismiss - Round One**

Defendant filed his First Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b) and Federal Rule of Bankruptcy Procedure 7012. On June 10, 2013, Plaintiff's present counsel substituted in to represent Plaintiff. Opposition to the First Motion to Dismiss was filed and then a Reply was filed by the Defendant.

This court posted its tentative decision[6] on the merits to deny the First Motion to Dismiss on several grounds. First, the

---

[4] Exhibit A, Dckt. No. 83; Exhibit B (Dckt. 34) to the First Amended Complaint (incorporated in ¶ 15, Dckt. 33); and admitted in Paragraph 15 of the Answer (Dckt. 71).

[5] Complaint, Dckt. 1.

[6] Detailed tentative rulings based on the evidence and legal authorities presented by the parties are posted on the court's website the day before law and motion hearings.

3

Motion was not properly served.   Second, the Motion failed to comply with the basic pleading requirements of Federal Rule of Civil Procedure 7(b) and Federal Rule of Bankruptcy Procedure 7007.[7]   At the August 1, 2013 hearing on the First Motion to Dismiss the court and attorneys discussed the provisions of 11 U.S.C. § 553 providing that (with certain inapplicable exceptions) the Bankruptcy Code does not effect setoff rights.

At the August 1, 2013 hearing counsel for Plaintiff consented to the First Motion to Dismiss being granted with leave to amend. Counsel for Plaintiff stated that he had already determined that the *pro se* prepared Complaint would be amended.[8]

**First Amended Complaint, Motion to Dismiss,
Motion to Strike – Round Two**

Plaintiff filed the First Amended Complaint (Dckt. 33) prepared by her counsel which asserted nondischargeability of the debt under 11 U.S.C. § 523(a)(5) and (15) and the right of setoff pursuant to 11 U.S.C. § 553.   The Parties were not able to resolve the dispute, and the Amended Complaint begat several motions from the Defendant.

Defendant filed a Motion to Strike, seeking to strike the following language of the Amended Complaint (pg. 8, ¶ 4, lines 2-3),

> ...including attorney fees and costs incurred in litigating this adversary proceedings, subject to proof.

It was argued by Defendant that the above language should be

---

[7]   June 27, 2013 Civil Minutes, Dckt. 21.

[8]   Civil Minutes, Dckt. 16 at pg. 4.

4

stricken based on it constituting "[a]n insufficient defense or any redundant, immaterial, impertinent, or scandalous material." The Motion to Strike did not state with particularity the grounds by which the language was any of the above. Fed. R. Civ. P. 7(b); Fed. R. Bankr. P. 7007. Defendant argued in his Points and Authorities (Dckt. 38) that Plaintiff failed to assert a contractual or statutory provision as the basis for attorneys' fees as required under the "American Rule."

Defendant also filed a separate (as required under the motion pleading rules) Motion to Dismiss the First Amended Complaint. The grounds stated with particularity in the motion (as required by Fed. R. Civ. P. 7(b) and 7007) consisted of the following statement:

> [o]n the grounds: (1) that there are no facts set forth in the complaint to support a claim for relief against him (2) that the plaintiff has failed to and cannot state any causes of action against him.

Motion to Dismiss First Amended Complaint, Dckt. 40. These "grounds" are merely a recitation of the Federal Rule of Civil Procedure 12(b).

This recitation of the Rule is insufficient to meet the "state with particularity standard" for motions, as well as even the less strict "short plain statement of the grounds" requirement for a complaint. Fed. R. Civ. P. 8(a), Fed. R. Bank. P. 7008; *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *St Paul Fire & Marine Ins. Co. v. Continental Casualty Co.*, 684 F.2d 691, 693 (10th Cir. 1982); *Martinez v. Trainor*, 556 F.2d 818, 819-820 (7th Cir. 1977) (citing to 2-A MOORE'S FEDERAL PRACTICE, para. 7.05, at 1543 (3d ed. 1975)); *In re Weatherford*, 434

B.R. 644 (N.D. Ala. 2010).

In responding to the Motion to Dismiss First Amended Complaint, Plaintiff addressed in detail the 11 U.S.C. § 553 grounds for the discharge not limiting the Plaintiff's setoff rights.[9] In responding to the Motion to Strike the portion of the Amended Complaint by which Plaintiff asserted the right to attorneys' fees, Plaintiff stated that the basis of the attorneys' fees was asserted under Family Code §§ 2030, 2032, 3557.

The court denied Defendant's Motion to Strike and Motion to Dismiss First Amended Complaint.[10] The court noted Defendant's and Defendant's counsel repeated failures to comply with the minimum pleading requirements of Federal Rule of Civil Procedure 7(b) and Federal Rule of Bankruptcy Procedure 7007.

**Answer to First Amended Complaint – Round Three**

On November 14, 2013, Defendant filed his Answer to the First Amended Complaint.[11] In the Answer Defendant not only opposes the relief requested, but also states his claim for attorneys' fees against Plaintiff pursuant to California Family Code §§ 2030-2032 and 271. Defendant's counsel pleads this claim for attorneys' fees by stating it in the prayer at the end of the Answer (the same pleading method used by Plaintiff's counsel in the First Amended Complaint). No other "claim" for attorneys' fees is stated in the Answer.

---

[9] Opposition, Dckt. 45.

[10] Civil Minutes, Dckts. 58, 60; Orders, Dckts. 62, 64

[11] Answer, Dckt. 71.

6

**Stipulated Order That Setoff Rights
Were Not Discharged – Round Four**

At the November 21, 2013 Status Conference the court queried the Parties' attorneys as to why, after apparently agreeing that the application of 11 U.S.C. § 533 resolved the issue, the Parties could not come to a settlement on the Amended Complaint.  After posturing by the Parties, the inability to resolve the substantive issues in the Adversary Proceeding came down to the attorneys and their clients not agreeing on their competing claims for attorneys' fees.  At that point the court accepted the Parties stipulation stated on the record resolving the merits of the Complaint by determining that the setoff rights were not discharged.[12]

**Present Motion for Attorneys' Fees – Round Five**

The Parties were unable to resolve the attorneys' fee issue and on January 8, 2014, Plaintiff filed the present Motion for Attorneys' Fees as the prevailing party.  At the January 30, 2014 continued status conference, the parties addressed with the court the pending contested motion for attorneys' fees and unaddressed issues in connection with the Motion and the Opposition. Supplemental pleadings were filed by both Parties to fully address the competing claims which they presented to the court.

### PLAINTIFF'S MOTION FOR FEES AND COSTS AND DEFENDANT'S OPPOSITION

The fighting over this Motion is symptomatic of the Parties' greater conduct in this Adversary Proceeding (and the Family Law Proceeding) and the inability of the Parties, and their respective

---

[12] Civil Minutes, Dckt. 76; Order, Dckt. 78.

attorneys, to "get along."  Though the non-dischargeability issue was illusory because the State Court judge created a setoff right which could be enforced pursuant to 11 U.S.C. § 553, the Parties were incapable of bringing this matter to a conclusion.

Plaintiff requests $10,562.00 in attorney's fees and $363.46 in costs incurred in connection with prosecution of this Adversary Proceeding.  Plaintiff asserts that the above described fees and costs are to be award as prevailing party fees having preserved Plaintiff's setoff rights pursuant to 11 U.S.C. § 553 against Defendant's contention that they were discharged.

Plaintiff's Counsel has provided Monthly Billing Statements for the service period of May 24, 2013 - December 31, 2013, which are attached as Exhibit G in support of this Motion.[13]  No additional fees have been requested for the period beginning January 2014 and through the date of the hearing on this Motion.

**Statutory Basis Asserted For Attorneys' Fees**

Plaintiff has asserted several statutory grounds for attorneys' fees.  Defendant is correct that under the American Rule, parties to litigation bear their own attorneys' fees unless a provision is made by contract, statute, or rule (such as Fed. R. Civ. P. 11, Fed. R. Bank. P. 9011, or the federal discovery rules) for another party to the litigation to pay the attorneys' fees. *Travelers Casualty & Surety Company of America v. Pacific Gas and Electric Company*, 549 U.S. 443, 448-449 (2007); *Meador v. Baroff (In re Baroff)*, *105 F.3d 439* (9th Cir. 1997), awarding attorneys' fees in nondischargeability action when contractual or statutory

---

[13]  Dckt. No. 83.

8

grounds existed under California law for the issues litigated.[14] These Grounds are:

**California Family Code § 2030**

California Family Code § 2030 provides that in connection with a marital dissolution, annulment, or separation a court may award a party "whatever amount is reasonably necessary for attorney's fees" to "ensure that each party has access to legal representation...to preserve each party's rights."[15]  The court is to make finding as to the "whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties," and then "shall make an order awarding attorney's fees and costs."[16]

This section applies not only to a proceeding for dissolution of marriage, nullity of marriage, or legal separation, but in "any proceeding subsequent to the entry of the related judgment."[17] This Adversary Proceeding is a proceeding subsequent to the State Court judgment and relates to the enforcement of that State Court judgment.

A Motion for attorneys' fees and costs pursuant to Family Code § 2030 requires an analysis of the respective needs of the parties, as well as the ability to pay on the part of the party from whom fees have been requested. *Marriage of Rosen* 105 Cal. App.4th 808,

---

[14]   The court notes that the decision in *Baroff* predates the Supreme Court's ruling in *Travelers*, which effectively overrules that portion of *Baroff* discussing the non-applicability of a state law right to attorneys fees if bankruptcy issues are being determined.

[15]   Cal. Fam. § 2030(a).

[16]   *Id.*

[17]   *Id.*

829 (2002); *Marriage of Drake* (1997) 53 Cal. App. 4th 1139, 1166 (1997).  As set forth by Defendant, the court is to exercise both discretion and the consideration of the statutory factors in the exercise of that discretion.  *In re Marriage of Cheriton*, 92 Cal. App. 4th 269, 315 (2001).

Pursuant to California Family Code § 2030(e), the California Judicial Council has promulgated a rule of court for the application of this attorneys' fees provision.  California Rule of Court 5.427, for proceeding in State Court, provides that a request for attorneys' fees based on financial need, as described in Family Code sections 2030, 2032, 3121, 3557, and 7605 include the following:

A. A current Income and Expense Declaration;

B. A personal declaration in support of the request for attorney's fees and costs (information in California Form FL-158);

C. Detailed time and charges for the attorneys' fees information of the type normally provided in federal court for fee applications or prevailing party attorneys' fees.

When proceeding in state court, the response to such a motion must include the income and expense information and personal declaration with the Form FL-158 information.  California Rule of Court 5.427(b).

California Family Code § 2032 provides that the court may award attorneys' fees and costs pursuant to Section 2030 "where the making of the award, and the amount of the award, are just and reasonable under the relative circumstances of the respective

10

parties."[18]  In "determining what is just and reasonable," the court shall take into consideration (1) "the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately," and (2) taking into consideration, to the extent relevant, the spousal support circumstances stated in California Family Code § 4320.[19]  The fact that the party requesting an award of attorney's fees and costs has resources from which the party could pay the party's own attorney's fees and costs is not itself a bar to an order that the other party pay part or all of the fees and costs requested.   Financial resources are only one factor for the court to consider in determining how to apportion the overall cost of the litigation equitably between the parties under their relative circumstances.[20]

**California Family Code § 3557**

California Family Code § 3557(a) provides that the court may award attorneys' fees to (1) a custodial parent based on an existing support order or penalty incurred in connection with Chapter 5 (Cal. Fam. §§ 4720 et seq.) or (2) for a supported spouse in an action to enforce an existing order for spousal support.  The award of attorneys' fees is appropriate to ensure each party's access to legal representation for the above when the court determines that (1) an award of attorneys' fees is appropriate, (2) there is a disparity in access to funds to retain counsel, and (3) one party is able to pay for legal representation for both

---

[18]  Cal. Fam. Code § 2032(a).

[19]  Cal. Fam. Code § 2032(b).

[20]  *Id.*

11

1  parties.

2  **California Family Code § 271**

3      California Family Code § 271 provides that a court may award

4  attorney's fees and costs to the extent to which the conduct of a

5  party or attorney "furthers or frustrates the policy of the law to

6  promote settlement of litigation, and where possible, to reduce the

7  cost of litigation by encouraging cooperation between the

8  attorneys."[21]

9  **California Family Code § 4320**

10      California Family Code § 4320 provides for factors considered

11  in awarding spousal support, not an award of attorneys' fees.

12  **Defendant's Opposition and Plaintiff's Reply**

13      Defendant opposes the Motion advancing several arguments.

14  First, Defendant asserts that litigation in this Adversary

15  Proceeding is for nondischargeability of debt, not spousal or child

16  support enforcement.   Therefore, he contends that statutory

17  attorneys' fees provisions of the California Family Code should not

18  apply in this Adversary Proceeding.[22]   Further, Defendant asserts

19  that there is no "contract," such as a separation or dissolution

---

21     [21]   Cal. Fam. Code § 271(a).

22     [22]   In making this argument Defendant relies upon the holding in
*Fobian v. Western Farm Credit Bank (In re Fobian)*, 951 F.2d 1149, 1153
23  (9th Cir. 1991).   This appears to ignore the holding in *Travelers*
which expressly rejected the holding in *Fobian*. "In light of the
24  broad, permissive scope of § 502(b)(1), and our prior recognition that
'[t]he character of [a contractual] obligation to pay attorney's fees
25  presents no obstacle to enforcing it in bankruptcy,' it necessarily
follows that the *Fobian* rule cannot stand." *Travelers*, 549 U.S.  at
26  453-454.

27    Additionally, Defendant does not explain how he, in good faith,
pleaded a "claim" for attorneys' fees in his Answer if his contention
28  that the California Family Code Sections (which he cited in his
Answer) cannot apply to this Adversary Proceeding.

Case 13-09016    Filed 05/07/14    Doc 116

stipulation, which provides for attorneys' fees.  To the extent that the Family Code Provisions do apply, Defendant asserts that Plaintiff's evidence is insufficient to support an award of attorneys' fees.

Defendant further asserts that even if the California Family Code applies in this Adversary Proceeding, Plaintiff does not have the right to attorneys' fees even if she is the prevailing party. Defendant asserts that Plaintiff has more income than the Defendant and no "disparity" in ability to pay legal fees exists.  Defendant cites to an order by the Superior Court, entered on January 28, 2013, where the court found Plaintiff made $9,197.00 monthly in comparison to Defendant's $7,333.00, to highlight the Parties' income disparity.[23]

Defendant also argues that Plaintiff has not adequately pleaded a claim for attorneys' fees as required by Federal Rule of Bankruptcy Procedure 7008(b), asserting that there is merely a demand for attorneys' fees in the prayer of the First Amended Complaint.  Defendant asserts that Federal Rule of Bankruptcy Procedure 7008(b) expressly requires that a request for an award of attorneys' fees be "pleaded as a claim in a complaint, cross-claim, third-party complaint, answer, or reply."  Therefore, Plaintiff merely stating a demand for an award of attorneys' fees, and there being no claim in the Plaintiff's First Amended Complaint, does not comply with Federal Rule of Bankruptcy Procedure 7008(b).[24]

---

[23] Exhibit A, State Court Findings and Order After Hearing, Dckt. No. 83 at 2-6, 19.

[24] The irony of this contention by Defendant is obvious in light of Defendant's counsel "proper pleading" of Defendant's claim for attorneys' fees in exactly the same manner.  This "Do as I say, not

Defendant additionally contends that Plaintiff's Motion For Attorneys' Fees does not state with particularity the grounds upon which the relief sought is based pursuant to Federal Rule of Bankruptcy Procedure 9013.[25]  Finally, Defendant contends that to the extent attorneys' fees would be considered by this court, conduct of Defendant in this Adversary Proceeding does not rise to the level of sanctionable conduct; that a sanctions award cannot impose an unreasonable financial burden on Defendant; and that Plaintiff has not adhered to relevant California state law in requesting fees in this Adversary Proceeding.[26]

Plaintiff responds asserting that Defendant was adequately notified of Plaintiff's request for attorney's fees from the outset of this Adversary Proceeding, citing *Charley Y., Inc. v. Carey (In re Carey)*, 446 B.R. 384 (B.A.P. 9th Cir. 2011) in support of this contention.  Plaintiff states that the pleading provisions in the Federal Civil and Bankruptcy Rules are intended to provide the parties with "adequate notice" of the opposing party's claims or defenses.  By making a prayer for attorneys' fees, Defendant was put on notice of Plaintiff's request for attorney fees.[27]

---

as I do" attitude is indicative of the "scorched earth," "salt the ground" litigation strategy of Defendant.

[25]  Federal Rule of Bankruptcy Procedure 9013 does not apply in Adversary Proceedings.  However, that Bankruptcy Rule mirrors Federal Rule of Civil Procedure 7(b), which is incorporated into Federal Rule of Bankruptcy Procedure 7007, which does apply to adversary proceedings.

[26]  Supplemental Opposition, Dckt. No. 103.

[27]  In *Carey*, the panel found that the complaint included the claim for an award of attorney's fees was stated not only in the preamble of the complaint and prayer, but the allegations set forth in complaint contained supporting factual allegations identifying the promissory note, execution of replacement guarantee, and other

14

**OBJECTION TO ADMISSION OF SETTLEMENT COMMUNICATIONS**

Defendant asserts that Plaintiff's submission of Exhibits D and E (Dckt. 83) relate to the Parties' settlement negotiations in their marital dissolution proceedings and disclosure thereof violates California Evidence Code § 1152(a). Defendant contends that as a matter of the California Rules of Evidence such exhibits cannot be used "to prove [Defendant's] liability for the loss or damage or any part of it."

The Federal Rules of Evidence govern the presentation of evidence in federal court, not the California Rules of Evidence. See Fed. R. Evid. 1101. Federal Rule of Evidence 408 expressly addresses the use of communications or conduct relating to compromise offers and negotiations. This Rule provides that settlement communications or conduct are not admissible "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a).

However, Federal Rule of Evidence 408(b) expressly provides, "The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." There is no bar when the underlying claim is not in dispute, does not protect other evidence disclosed during settlement communications, or does not exclude evidence when offered for a purpose other than proving the validity or amount of

---

underlying substantive facts supporting judgment creditor's claims. This was sufficient to provide notice to Debtor for the judgment creditor's request of attorney fees and to sufficiently state a claim for such relief in the complaint. *In re Carey,* 446 B.R. at 392.

a disputed claim.    WEINSTEIN'S FEDERAL EVIDENCE §§ 408.06, 408.07, 408.08.

The court is not adjudicating in this Motion whether the $15,000.00 award is dischargeable or the amount of such debt.    That bell has been rung and the court order has been entered that the setoff rights statutorily provided in 11 U.S.C. § 553 have not been "discharged" and can continue to be enforced.    The court is determining (1) whether Plaintiff has a right to attorneys' fees and (2) if so, the amount of those fees and costs.

Exhibit D is a November 22, 2013 letter from Thomas Hogan, Plaintiff's attorney, to Robert Rodriguez, Defendant's attorney. It states in writing that the Plaintiff was extending the offer to accept $2,500.00 in legal fees relating to the Adversary Proceeding for five days.    It also states that the total fees and costs to which Plaintiff believes she is otherwise entitled to recover $10,897.67 in legal fees, plus possible additional fees relating to a motion for award of prevailing party fees.

Exhibit E is Defendant's counsel's response to Plaintiff's settlement letter.    It rejects the Plaintiff's offer and makes a counter-demand for $3,500.00 in legal fees for the Defendant.    This communication extends Defendant's attorneys' fee counter-demand for a period of five days.    The letter then also includes Defendant's contentions why there should not have been a setoff and that the non-setoff grounds asserted in the First Amended Complaint were not valid.

First, last, and foremost, the above Exhibits have not been considered by the court for the purpose of proving the validity or amount of the $15,000.00 claim, whether there is an obligation to

pay attorneys' fees, or the amount of attorneys' fees which could be awarded.    Taken on their face, the Response and "counter-settlement" proposed by Defendant is a statement that Defendant owed no attorneys' fees, that Defendant has a right to attorneys' fees, and a demand that Plaintiff pay him $3,500.00.

The court understands and accepts these exhibits as evidence relating to the respective ongoing litigation strategies of the Plaintiff and the Defendant in this Adversary Proceeding.    The Defendant has the right to not accept a settlement offer.    The Defendant has the right to assert a counter-demand.    However, whether that conduct was reasonable, in good faith, and based on a legal principle is something that the court may consider in determining whether the Plaintiff's legal expenses were reasonable and necessary.   The Defendant cannot contend that "it was Plaintiff who has been unreasonable and unnecessarily ran up legal expenses," and then hide the communications which are reflective of the litigations strategies, communications, and legal posturing of the parties.

The court overrules the evidentiary objection, accepting the evidence only for purposes which do not prove or disprove the validity or amount of the attorneys' fees requested by this Motion, or the underlying $15,000.00 obligation.

### PLAINTIFF ADEQUATELY PLEADS A CLAIM FOR ATTORNEYS' FEES BASED ON THE SPECIFIC FACTS, PLEADINGS, AND ADMISSIONS IN THIS ADVERSARY PROCEEDING

Before determining if and the amount of attorneys' fee which may be awarded, the court first considers if a claim for such has been sufficiently pleaded by Plaintiff.    The requirements for pleading a claim for attorneys' fees are set out in Federal Rule of

Bankruptcy Procedure 7008(b), which provides (emphasis added) that,

> A request for an award of attorney's fees shall be pleaded as a claim in **a complaint,** cross-claim, third party complaint, **answer, or reply** as may be appropriate.

The express language of this Rule imposes the "pleaded as a claim" requirement all requests to attorneys' fees – whether by a plaintiff or defendant.    Federal Rule of Bankruptcy Procedure 7008(a) also makes Federal Rule of Civil Procedure 8 applicable in Adversary Proceedings.

Federal Rule of Civil Procedure 8 specifies the requirements for pleadings in federal court.  "A pleading that states a claim for relief must contain:...(2) a short plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief."[28]   The definition of the term "pleading" is set forth in Federal Rule of Civil Procedure 7(a) includes an answer to a complaint.[29]  In this Adversary Proceeding, Plaintiff's Complaint does not state a separately denominated "cause of action" or a "short plain statement of the claim showing that the pleader is entitled to relief claim."  Defendant maintains that the request for attorneys' fees made in a prayer at the end of a complaint is inadequate to satisfy the requirement of Rule 7008(b). Defendant cites *Garcia v. Odom (In re Odom)*, 113 B.R. 623 (Bankr. C.D. Cal. 1990); *Hartford Police F.C.U. v. DeMaio (In re DeMaio)*, 158 B.R. 890, 892 (Bankr. D. Conn. 1993); *In re AM*

---

[28]   Fed. R. Civ. P. 8(a)(2), (3).

[29]   Fed. R. Civ. P. 7; Fed. R. Bank. P. 7007.

18

*International, Inc.*, 46 B.R. 566 (Bankr. M.D. Tenn. 1985) for this proposition. The court notes that each of these three cases relied on by Defendant present unique circumstances that must be reviewed on a case-by-case basis.

The court in *In re Odom* held that plaintiffs had not properly pleaded a claim for attorneys' fees, noting that the only reference to attorneys' fees was in the prayer. In addition to believing that the method of pleading in that adversary proceeding did not comply with Federal Rule of Bankruptcy Procedure 7008(b), the court also determined that there was no right under the substantive law to attorneys' fees for the adversary proceeding because it was a nondischargeability action. (Applying what would become the *Fobian* Rule, which was subsequently rejected by the Supreme Court in *Travelers*.) The requested attorneys' fees in *Odom* had been incurred in connection with two prior state court actions. The court concluded that the attorneys' fees sought in *Odom* were special damages arising from other proceedings (not prevailing party attorneys' fees in the action before the court) which had not been properly pleaded as required by Federal Rule of Civil Procedure 9(a) and Federal Rule of Bankruptcy Procedure 7009.

In *Matter of DeMaio*, the plaintiff did not assert any "claim" for attorney's fees in its pre-trial memorandum, during trial, or in its post-trial memorandum. Only after the adversary proceeding was closed did that plaintiff seek to amend the prior judgment contending that the failure to award attorneys' fees was a clerical error.

In the third case cited by Defendant, *In re AM International, Inc.* that court did not decide the issue of awarding costs and

19

attorneys' fees on the question of whether they were properly pleaded in the complaint.  Rather, the discussion of attorney fees centered on whether an entity knowingly violated the automatic stay and whether that violation warranted a punitive sanction of attorney's fees.  *In re AM Int'l, Inc.*, 46 B.R. 566, 577 (Bankr. M.D. Tenn. 1985).

Courts have split on the issue of what constitutes a party having properly "pleaded as a claim in a complaint...., answer or reply" the right to attorneys' fees.  This court identifies one line of cases from bankruptcy courts holding that a "claim" for attorney's fees does not need to be pleaded in the body of a complaint.  *See First Nat'l Bank v. Bernhardy (In re Bernhardy)*, 103 B.R. 198, 199 (Bankr. N.D. Ill. 1989) (holding, without discussing Rule 7008(b), that "[t]here is no provision in the Code or the rules that requires [a debtor] to plead a request for attorney's fees" and that if there were such a provision requiring specific pleading, a prayer for "'such other relief as is just' is sufficient"); accord, *Thorp Credit, Inc. v. Smith (In re Smith)*, 54 B.R. 299, 303 (Bankr. S.D. Iowa 1985) ("[T]here [is no] good reason to hold that such pleading is required.  'Since § 523(d) clearly states that the debtor is entitled to costs and reasonable attorney's fees, the creditor is on notice that loss of his claim could result in his being assessed those fees and costs.'") (quoting *Commercial Union Ins. Co. v. Sidore (In re Sidore)*, 41 B.R. 206, 209 (Bankr.W.D.N.Y.1984)).

This court applies a plain language reading of the requirements of Federal Rule of Bankruptcy Procedure 7008 (a) and

(b), and Federal Rule of Civil Procedure 8(b).[30]  This is consistent with the holding of the Bankruptcy Appellate Panel in *In re Carey*,[31] finding,

> [t]he Complaint clearly stated in its first paragraph that Appellant sought an award of attorney's fees from the Debtor. In Paragraph 1 of the Complaint, Appellant identified the Promissory Note as a basis for its claim. In Paragraph 7 of the Complaint, Appellant referenced the Debtor's execution of the Replacement Guarantee. In Paragraph 10 of the Complaint, Appellant noted that it previously filed a complaint against the Debtor in the Marin County Superior Court seeking damages including attorney's fees. In its First Claim for Relief in the Complaint, Appellant realleged the first 18 paragraphs of the Complaint, including Paragraphs 1, 7 and 10. Finally, in its Prayer for Relief, Appellant requested a judgment for damages "including principal, accrued and accruing interest, costs, and attorney's fees."

The Bankruptcy Appellate Panel distinguished the pleading in *Carey* from the *Odom* line of cases based on the "claim for attorneys' fees" being stated in the body of the complaint, not merely in the prayer, which included supporting factual allegations for the basis for the claim.

For the First Amended Complaint, Answer, and the present Motion, the court believes that neither counsel appreciated the

---

[30]    The Supreme Court has been very clear in reading and applying the "plain language" stated by Congress in statutes.  *Hartford Underwriters Insurance Company v. Union Planters Bank, N.A.*, 530 U.S. 1 (2000);  *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 103 L. Ed. 2d 290, 109 S. Ct. 1026 (1989).  The basic direction is that Congress says in a statute what it means and means in a statute what it says.  *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254, 117 L. Ed. 2d 391, 112 S. Ct. 1146 (1992); (quoting *Caminetti v. United States*, 242 U.S. 470, 485, 61 L. Ed. 442, 37 S. Ct. 192 (1917));  *United Savings Association of Texas v. Timbers of Inwood Forest Associates, LTD.*, 484 U.S. 365, 371 (1988).  This court will not presuppose that the Supreme Court or Congress, in adopting the Federal Rules of Bankruptcy Procedure, did so expecting that the inferior court would not first look to the plain language meaning of the Rule.

[31]    *In re Carey*, 446 B.R. at 392.

significance of Rule 7008(b) pleading requirements when the First Amended Complaint and Answer were filed. The court will presume that each attorney believed, at the time they prepared and filed the respective pleading, the method they used complied with the Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure. If not brought to their attention by the court in attempting to promote compliance with the basic pleading rules in federal court, this point would have been a non-issue.

Additionally, while the Adversary Proceeding dragged on due to what the court has determined to be the intentional conduct and strategy of the Defendant, it was relatively early in the pleading process. It is likely the attorneys for both Parties, having identified this federal court pleading requirement, would each have sought leave (as any stipulation in this Adversary Proceeding was all but impossible) to further amend the First Amended Complaint and the Answer to properly state the respective claims for attorneys' fees.

In response to the Motion to Strike, the Plaintiff clearly identified several statutory grounds upon which the attorneys' fees were requested. There was no "surprise" to Defendant of those grounds (which included grounds some of the same statutes asserted by Defendant).

Finally, the court accepts Defendant's method of pleading Defendant's claim for attorneys' fees in his Answer as an admission (for purposes of this Adversary Proceeding only)[32] of as proper

---

[32] The court accepts the pleading practices of the attorneys in this case only for purposes of this case. It would be the height of hypocrisy for a court to accept Defendant's counsel's pleading method of stating Defendant's claim for attorneys' fees, and then conclude

pleading of such claim pursuant to Federal Rule of Civil Procedure 8 and Federal Rule of Bankruptcy Procedure 7008(b).[33] This Answer was filed on November 14, 2013, and Defendant and Defendant's counsel are hard pressed to state that they incorrectly pleaded the Defendant's claim for attorneys' fees. Even as late as February 20, 2014, the Defendant continued to assert that he has properly stated a claim for attorneys' fees against Plaintiff.[34]

## AWARD OF ATTORNEYS' FEES FOR PLAINTIFF

The court's decision begins with findings and conclusions with respect to Defendant's litigation strategy in this Adversary Proceeding. Then the court considers the alternative statutory grounds advanced by Plaintiff for the attorneys' fees. Finally, the court determines the reasonable amount of attorneys' fees permitted pursuant to the applicable statute.

### Defendant's Litigation Strategy

At oral argument Defendant's counsel in this Adversary Proceeding stated that he was Defendant's counsel in the Family Law Proceeding in which the $15,000.00 of attorneys' fees were awarded Plaintiff pursuant to California Family Code § 271. The State Court judge found (as a necessary element of granting the relief) that Defendant and his counsel worked to "frustrate" the State of California policy in connection with family law obligations to promote settlement and reduce costs of litigation."

---

that Plaintiff, using exactly the same pleading method, did not sufficiently state a claim in the same Adversary Proceeding.

[33] Answer, Dckt. 71.

[34] Defendant's Supplemental Opposition, pg. 12:9-11, Dckt. 103.

23

1    Defendant and his counsel have imported their State Court
2    "burn to the ground," "salt the earth" litigation strategy to this
3    court.   As stated at the hearing and addressed in this Decision,
4    the court concludes that the Defendant and his counsel sought to
5    make the cost of litigation in this court so expensive as to create
6    a financial hardship, cost prohibitive, financially improvident, an
7    unreasonable economic drain, and an economic barrier to Plaintiff
8    attempting to assert and preserve her setoff rights.

9    The court finds that the Defendant has engaged in conduct to
10   frustrate the policy of promoting and achieving settlements, and to
11   reduce the cost of litigation relating to California family law
12   matters.   It is clear that the Defendant, with the assistance of
13   his attorney in this Adversary Proceeding, has continued the
14   litigation strategy which "earned him" an attorneys' fees award of
15   $15,000.00 in the Family Law Proceeding.   The protections afforded
16   by that Family Code Section are equally applicable to the
17   proceedings to enforce and protect here.

18   While Defendant's attorney contends that Plaintiff's attorney
19   was unreasonable, Defendant's attorney did little, if anything, to
20   push this proceeding to settlement or prompt resolution.   Left to
21   their own devices the Defendant and Defendant's counsel would still
22   be contending that the setoff right was discharged, with the
23   Adversary Proceeding grinding forward and piling up Plaintiff's
24   legal fees.

25   The court also notes that Defendant made no effort to conclude
26   this matter on the merits.   Even if Defendant's attorneys find
27   Plaintiff's attorney "difficult to work with," knowledgeable,
28   experienced attorneys can manage such a situation and push the

24

correct terms of a "settlement" before the judge.  One easy method in federal court is to make an offer of judgment pursuant to Federal Rule of Civil Procedure 68 and Federal Rule of Bankruptcy Procedure 7068.  This turns the table on an "difficult" plaintiff or plaintiff's attorney.  If the proposed judgment is refused and the ultimate judgement is no better than what was offered, the defendant who offered the judgment will recover costs, which may include the attorneys' fees claim pleaded by the party making the offer.[35]

Further, the even more experienced litigator, once having learned of 11 U.S.C. § 553, could have sought a judgment on the pleadings on those grounds.  This would have mooted the balance of the Amended Complaint, bringing the litigation to a conclusion with there being very little "fight" left over attorneys' fees. Instead, the Defendant pursued his strategy to maximize the litigation costs and expenses, both for himself and the Plaintiff.

**The Parties Income and Economic Ability to Pay Attorneys' Fees**

Various arguments have been made by the Parties disputing the evidence of income presented by the other.  These economic factors are considered in varying degrees for each of the statutory grounds relied upon by the Parties.

Defendant confirms that in the dissolution proceeding his monthly income was stated to be $7,333.00.  Defendant's Statement of Financial Affairs in the Chapter 7 case listed his 2012 income

---

[35]    Fed. R. Civ. P. 68(d), Fed. R. Bank. P. 7068.

to be $111,950.00.[36]  This averages $9,329.17 a month.  In addition, Defendant is receiving $452.00 a month in support payments from Plaintiff (which is being setoff against the $15,000.00 attorneys' fees).[37]

In considering the reasonableness and need for an attorneys' fee award pursuant to California Family Code § 2030, the court requires that the amount awarded be "just and reasonable."  In that calculation the court considers the financial resources and circumstances of the parties, as described in California Family Code § 4320.  The court has considered the evidence provided by the parties, which financial information dates back to 2011.[38]

The court's task in sifting through the evidence to determine the income and finances of the Parties is complicated by the parties' cross-imputations that the other is intentionally misleading the court in representing his or her finances. Plaintiff has filed her Income and Expenses Declaration which states her current gross monthly income to be $2,667.00.[39] Plaintiff explains that her gross income has dwindled substantially

---

[36]  Exhibit 1, Dckt. 96; Bankr. E.D. Cal. 13-90382.

[37]  Amended Complaint ¶¶ 15, 16, and Answer ¶¶ 15, 16, Dckts. 33, 71.

[38]  These include the financial documents and information presented in Exhibit 7, Dckt. No. 93 at 47; Exhibit 1, Dckt. 96; Exhibit 8, Dckt. 93; Exhibit 1, Dckt. No. 96; Exhibit A, Dckt. No. 106; Exhibit B, *Id.*; Exhibit C, *Id.*); Exhibit D, *Id.*; Exhibit E, *Id.*; Exhibit F, *Id.*; Exhibit H, *Id.*; Exhibit I, *Id.*; Exhibit J, *Id.*; Exhibit K, *Id.*; Exhibit L, *Id.*; Exhibit 2, Dckt. No. 113; Exhibit 3, *Id.*; and Exhibit 4, Dckt. *Id.*  The court provides this partial listing of documents reviewed to dispel any notion by either party that there has not been a thorough consideration of all the testimony and documentary evidence presented.

[39]  Exhibit 1, filed February 4, 2014, Dckt. No. 113.

1  because of the loss of her business, Clip n Clean.

2      However, Defendant disputes Plaintiff's contention that she

3  only earns $2,667.00 monthly.  Defendant disputes that Plaintiff

4  actually sold the business, stating in his Declaration,[40]

5          [Plaintiff] has the means and ability to pay
        her own attorney's fees and costs in the
6          matter.  Plaintiff has misrepresented her true
        income on several occasions, and I am informed
7          and believe and on that basis allege thereon
        that she earns more than she actually
8          represents.

9          I dispute Plaintiff's contentions that I was
        unreasonably in any of the litigations.  To
10         the contrary, it was Plaintiff who has been
        unreasonably by concealing her actual income.
11         Plaintiff possess my property that was awarded
        to me in our dissolution matter and she
12         refuses to relinquish it to me.  She is in
        contempt of court orders.

13

14  Defendant's Declaration suffers from a fundamental flaw, he is only

15  able to make such statements "under penalty of perjury" based on

16  his "information and belief."  In substance, the Defendant

17  testifies that he has no personal knowledge and is not competent to

18  provide such testimony.  See Federal Rule of Evidence 602, which

19  requires personal knowledge for non-expert witness testimony.

20  Merely being informed by others and believing is not personal

21  knowledge testimony.

22      Defendant argues that the prior financial information

23  statements in the Family Law Proceeding demonstrate that Plaintiff

24  is currently making more than the $2,667.00 Plaintiff now

25  testifies to in her declaration.  Defendant contends that financial

26  information from 2009-2011 shows greater income for the Plaintiff

27

28      [40]  ¶ 2-3, Defendant's Declaration in Opposition to the Motion for
     Fees, Dckt. No. 105.

in the past – asserting that she has greater income now.

These contentions and reliance on three to five year old financial information do not persuade the court. Although Defendant disputes that Plaintiff's contention that she has closed or lost her business, the financial documents relating to Plaintiff's business are at least two and a half years old. The issue is whether the business is owned and operated by the Plaintiff now. Second, Defendant testifies that for Plaintiff's tax returns which he offers as evidence, Defendant "disputes the net income reported at line 31" of all of the forms.[41]    If the Defendant disputes the net income number, how does he reasonably expect the court to find the tax returns to be of significant weight on the issue of income.

Defendant also files the Chapter 7 Bankruptcy Schedule I of Plaintiff, from her bankruptcy case, N.D. Cal. No. 12-42406, as evidence that Plaintiff makes an income of $12,000.00 monthly. This evidence predates Plaintiff's asserted loss of her business. Defendant also makes unsubstantiated allegations that Plaintiff has taken multiple trips abroad to Peru, and that Plaintiff sold the boat and trailer awarded to Defendant in the marital dissolution case to "pocket" the money.[42]

There is a recurring problem with Defendant's testimony and exhibits. The testimony is long on argument and speculation, but short on testifying to actual facts. Much of the financial information is dated, and does not address the Plaintiff's

---

[41]   Declaration, Dckt. No. 105.

[42]   Defendant's Declaration, Dckt. No. 105.

28

contention that she no longer has her business which generated the
higher income.

With respect to evidence, Plaintiff fares only a bit better in
connection with this Motion.   Plaintiff offers partial financial
documents and no clear record of her current income (other than her
general testimony).

All told, in the muck and mire of evidence presented, the
court regards Plaintiff's February, 2014 Income and Expense
Declaration, and the Defendant's November, 2013, Income and Expense
Declaration as competent pieces of evidence showing the parties'
relative financial circumstances.  The Declarations are each signed
by the respective Parties, who swear under penalty of perjury that
all of the information contained in the forms and any attachments
is true and correct.   They are also the most recent pieces of
evidence provided by the Parties, showing their relative income and
expenses.

In Plaintiff's Income and Expense Declaration, signed on
February 3, 2014, Dckt. No 113 starting at page 3, Plaintiff
declares that her income is $2,557.00 per month.  She also lists
$427.00 received in life insurance benefits, and $2,000.00 in
assets, as well as total expenses of $2,873.00.

Defendant's Income and Expense Declaration, dated November 18,
2013, is the most recent declaration of expenses and income that
the court has on the record for Defendant.   In the Declaration,
Defendant states under penalty of perjury that he receives
$6,600.81 in gross income per month, before taxes. Defendant notes
deductions such as required union dues of $97.19, required
retirement payments of $1,385, and medical insurance premiums of

$513.00 in the Deductions section of the Declaration. Dckt. No. 113 starting on page 13.

As addressed further in this Decision, the court concludes that even if the Plaintiff's income was as high as alleged by Defendant, proper grounds exist under two Family Code Statues to award attorneys' fees.

**Statutory Basis For Award of Attorneys' Fees**

The court determines that Plaintiff is entitled to recover attorneys' fees pursuant to two provisions of the California Family Code.

Plaintiff requests an award of attorneys' fees pursuant to California Family Code § 271. The court finds that Defendant's conduct in this Adversary Proceeding "[f]rustrates the policy of the law to promote settlement of litigation, and where possible, to reduce the cost of litigation by encouraging cooperation between the attorneys." Cal. Fam. § 271(a). Plaintiff has been forced to engage in otherwise unnecessary litigation and incur "higher costs than necessary" based on Defendant's contention that Plaintiff's setoff right had been discharged and Defendant's litigation strategy refusing to settle this Adversary Proceeding based on the provisions of 11 U.S.C. § 553. Though the court does not expect any party to quickly "fold its tent" when it first learns of a statutory provision or controlling case law, Defendant continued to grind on this litigation disputing the effect of the clear statutory language of § 553. This conduct by Defendant has continued through the present opposition to the Motion for Attorneys' Fees.

The Defendant's strategy has been to make prosecution of this

Adversary Proceeding financially improvident for the Plaintiff. Defendant has actively worked to drive up the costs of this litigation to render it more expensive to litigate this Adversary Proceeding than the $15,000.00 State Court judgment for legal fees.

Defendant did and has continued to engage in conduct and a litigation strategy which is designed to and "frustrates the policy of the [California] law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys." This litigation strategy implemented by Defendant falls below the "minimum level of professionalism and cooperation" which is required in connection with family law matters for purposes of California Family Code § 271. *Davenport v. Davenport (In re Marriage of Davenport)*, 194 Cal. App. 4th 1507, 1524 (2011). "Litigants who flout that policy [reduction of costs and promoting settlement] by engaging in conduct that increases litigation costs are subject to imposition of attorney fees and costs as a section 271 sanction." *Corona v. Corona (In re Marriage of Corona)*, 172 Cal. App. 4th 1204, 1225 (2009).

In considering the incomes, assets, and liabilities (which the Defendant has mostly discharged through bankruptcy) of the parties, this court concludes that attorneys' fees and costs are properly awarded to Plaintiff pursuant to California Family Code § 271.

**Award of Attorneys' Fees Does Not
Place an Undue Burden on Defendant**

There is no "unreasonable financial burden" placed on the Defendant in paying the legal fees and expenses of $10,915.00 as determined in this Decision. Defendant argues that payment of the

attorneys' fees and costs would be an undue burden on him, directing the court to Declarations of the Defendant and his attorney.[43]  Defendant's attorney's declaration focuses on what he asserts are the assets and income of the Plaintiff.  The attorney also provides his personal opinion that "plaintiff blatantly committed perjury regarding her income [in the state court matter]...."  Defendant's attorney offers little, if anything, as to why payment of attorneys' fees for the litigation strategy in this case imposes an "unreasonable financial burden" on Defendant. This argument presented as "evidence" further exemplifies an "anything goes," "run up the costs" defense strategy.

Defendant's declaration continues the same path of testimony, disputing the Plaintiff's contentions as to her income and assets. However, Defendant offers little, if any testimony as to why or how the payment of attorneys' fees imposes an "unreasonable financial burden" on him.  Defendant has a substantial monthly income and has shed himself of all of his other unsecured debt through the bankruptcy case.  Defendant can walk away from the secured debt if he wishes (electing to surrender collateral which is not of economic value).

Even with the court accepting the monthly income of only $7,333.00 asserted by the Defendant based on the Family Law Proceeding, a $300.00 a month payment for attorneys' fees awarded in this Adversary Proceeding would be only 4% of the monthly income.  While the Defendant may have "more fun things" to do in the future with $300.00 a month, he already received the "pleasure"

---

[43] (Dckt. 105) and Dckt. 104, respectively.

1  of engaging in the litigation strategy designed to drive up these
2  very costs and improperly frustrate the Plaintiff.

3      Further, the attorneys' fee award is enforced like any other
4  judgment, subject to all of the limitations under federal and state
5  law protecting a judgment debtor.  These include Federal Rule of
6  Civil Procedure 69; Federal Rule of Bankruptcy Procedure 7069;
7  15 U.S.C. § 1671 *et seq*; and California Code of Civil Procedure
8  §§ 699.720, 704.010 *et seq*.  The $10,925.46 (with the federal
9  judgment interest rate being nominal, almost 100% of any payment
10  applies to reduce the principal amount of this judgment) in fees
11  and costs can be repaid over 36 months with just a $305.00 a month
12  payment.

13      This court is also confident that it can properly consider
14  setting the correct wage garnishment amount, if that is how the
15  Plaintiff intends to enforce the judgment, so that the payment of
16  the judgment does not result in the Defendant or his dependant
17  suffering a hardship.  To the extent that the Defendant believes
18  that a requested wage garnishment, if any, to enforce the award of
19  attorneys' fees imposes too great a burden on him, this court can
20  properly adjust such garnishment under the enforcement of judgment
21  laws.

22      Ordering Defendant to pay the $10,915.00 in attorneys' fees
23  and costs does not impose an "unreasonable financial burden" on
24  Defendant.

25  **California Family Code § 2030**

26      Plaintiff also asserts that fees may properly be awarded
27  pursuant to California Family Code § 2030 as the amount reasonably
28  necessary for Plaintiff to preserve her rights in the $15,000.00

attorneys' fee award (Cal. Fam. Code § 271) in this Adversary Proceeding which is a proceeding subsequent to the award. For this statutory right to attorneys' fees, the court considers the income and the needs of the parties, with the court making finding as to the "whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties," and then "shall make an order awarding attorney's fees and costs."[44]

The court's findings and conclusions above relating to Defendant's litigation strategy of rendering economically unfeasible any attempted enforcement of Plaintiff's rights is equally applicable to the attorneys' fees requested under California Family Code § 2030. Unless Plaintiff desired to engage in the same type of "burn it to the ground" spite litigation commensurate with Defendant's defense strategy, Plaintiff would not reasonably be able to preserve her State Court judgment and rights thereunder – absent an award of attorneys' fees under California Family Code § 2030.

Even accepting Defendant's contentions that there is income parity between the Parties, that does not mean that the Defendant wins. As expressly stated in California Family Code § 2032(b), "Financial resources are only one factor for the court to consider in determining how to apportion the overall cost of the litigation equitably between the parties under their relative circumstances."

The Plaintiff, faced with the Defendant's litigation strategy, would not otherwise have reasonable access to legal representation

---

[44]    Cal. Fam. Code § 2030(a)(2).

to enforce her rights awarded by the State Court.  The Defendant created the actual, practical economic disparity in proceeding with the litigation.  The economic costs in litigating those rights, when faced with the Defendant's litigation strategy (which he and his counsel have apparently been imported from the State Court Family Law Proceedings), create a bar to enforcing those rights.

The court finds that the awarding of attorneys' fees incurred by Plaintiff to protect her rights and the $15,000.00 attorneys' fees award by the Superior Court in her family law case is proper pursuant to California Family Code § 2030.  The Defendant clearly has the ability to pay the attorneys' fees.  Defendant intentionally created a situation where there is a real, economic disparity between the Defendant (who will spend his last dime to litigate in an effort to thwart Plaintiff's family law rights) and the Plaintiff who is forced to lose money to enforce her rights under California Family Law and the award of California Family Code § 271 attorneys' fees sanctions.

As addressed above, ordering Defendant to pay $10,955.00 in attorneys' fees and costs does not impose an undue burden on Defendant.  He has the ability to reasonably pay such an award.

The court awards pursuant to California Family Code § 2030, as a separate and independent grounds, awards Plaintiff attorneys fees and costs as reasonably necessary for Plaintiff to access legal representation for this Adversary Proceeding to protect her rights and judgment awarded by the State Court in the Family Law Proceedings against Defendant's assertion that the right to setoff such obligation was discharged.

///

**ATTORNEYS' FEES ARE NOT AWARDED PURSUANT TO
CALIFORNIA FAMILY CODE § 3557;
CALIFORNIA CIVIL CODE § 1717; OR
CALIFORNIA CODE OF CIVIL PROCEDURE § 1021**

Plaintiff asserts that California Family Code § 3557 is an independent grounds for an award of attorneys' fees in connection with this Adversary Proceeding. The court disagrees. This Adversary Proceeding does not relate to a support order or a child support delinquency order, which is required for California Family Code § 2557.

It is further asserted that there is a right to attorneys' fees pursuant to California Civil Code § 1717. This Civil Code Section only authorizes an award of attorney fees for prevailing parties "in any action on a contract" where the contract "specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded . . . ." Cal. Civ. Proc. Code § 1717(a). California law permits recovery of attorney fees by agreement, for tort as well as contract actions. Cal. Civ. Proc. Code § 1021.

Here, the Complaint does not contain a breach of contract claim. Neither Plaintiff nor Defendant provides any contractual basis for an attorneys' fees claim in this Adversary Proceeding. Plaintiff does not point to any provision of any settlement agreements, any contracts entered into during the marital dissolution proceeding in the Superior Court, or any other contracts entered into between the parties, that would support the award for attorneys' fees as set forth by California Civil Code § 1717 or California Code of Civil Procedure § 1021.

The court denies the request for fees based on these two

36

statutory grounds which are based on contract.

## AMOUNT OF ATTORNEYS' FEES AND COSTS

The Plaintiff has requested attorneys fees of $10,562.00 and costs of $363.46, for which the Declaration of Thomas Hogan and time records presented in support of the Motion.[45]  These are the fees and costs through December 31, 2013.  Since that time, Plaintiff's counsel has been required to review numerous exhibits and supplemental briefs presented by the Defendant in connection with the present Motion.

In the Ninth Circuit, the customary method for determining the reasonableness of a professional's fees is the "lodestar" calculation. *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996), *amended*, 108 F.3d 981 (9th Cir. 1997). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales*, 96 F.3d at 363 (citation omitted). "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A compensation award based on the loadstar is a presumptively reasonable fee. *In re Manoa Financial Co.*, 853 F.2d 687, 691 (9th Cir. 1988).

In rare or exceptional instances, if the court determines that the lodestar figure is unreasonably low or high, it may adjust the figure upward or downward based on certain factors. *Miller v. Los Angeles County Bd. of Education*, 827 F.2d 617, 620 n.4 (9th Cir. 1987).  The court has considerable discretion in determining the

---

[45]  Declaration, Dckt. 81; Exhibit G. Dckt. 83.

reasonableness of professional's fees. *Gates v. Duekmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992). It is appropriate for the trial court to have this discretion "in view of the [court's] superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Hensley*, 461 U.S. at 437.

The requested fees of $10,562.00 are reasonable. These fees are computed only through the period December 31, 2013, and do not include the substantial litigation expenses relating to the present Motion which was not filed until January 8, 2014. Exhibit G presented by Plaintiff is the attorney billing statement which accounts for 69.9 hours, totaling $10,562.00 in fees. That equates to a blended hourly rate of $151.10. The Declaration of Plaintiff's counsel filed on January 8, 2014, does not provide a description of the attorneys who worked on this matter, their respective hourly rates, or a task billing analysis. Dckt. 81. Neither does Exhibit G provide a task billing analysis, identification of the persons billing, or the attorneys' hourly rates.

However, from a review of Exhibit G the court can distill the following. A person billing with the initials WS billed for services at the hourly rate of $100.00. These services are legal, not secretarial or clerical. This person is clearly not Plaintiff's counsel, Thomas Hogan, as person "WS" bills for meeting with Thomas Hogan.

There is a second person billing using the initial KC-B. This person is billing at a $180.00 hourly rate. Many of the services billed by this person relate to Emails and other communications.

The third person billing uses the initials "TPH," which the court identifies as Thomas P. Hogan, attorney of record for the Plaintiff.  His hourly billing rate is $350.00.

A fourth person billing appears, using the initials "LC."  The hourly rate for LC is $180.00 for what the court identifies as legal, attorney work (pleading and research).

The Opposition to the Motion does not interpose objections based on the billing rates of the persons.  The Defendant contends, in addition to the legal arguments, that the fees are not reasonable because it was Plaintiff and Plaintiff's counsel who were being unreasonable, that it was Defendant who was properly prosecuting his defense and claim for attorneys' fees.  This contention that it was the "Plaintiff's fault" is not supported by the evidence.

While not a show-piece motion and supporting documents for prevailing party fees, they do provide the court with sufficient information from which the court can determine that the $10,562.00 in fees is reasonable.  Counsel for Plaintiff prepared and filed the Amended Complaint and responses to the first motion to dismiss, the second motion to dismiss, and the motion to strike.  Counsel for Plaintiff also attended several status conferences, communicated with Defendant's counsel, and ultimately was able to state a stipulation on the record.  This necessitated Plaintiff's counsel to research the legal issues concerning the asserted nondischargeablility of the claims, the application of 11 U.S.C. § 355, and consideration of Defendant's arguments.

Plaintiff's counsel then had to prepare and file the Motion and supporting pleadings for attorneys' fees, as well as responsive

pleadings to the Defendant's Opposition, Supplemental Opposition, and the evidence presented by Defendant.  The court has the benefit of not only having reviewed all of the pleadings, but observed first hand the conduct, demeanor, and presentation of the legal arguments of both attorneys.

The court awards the Plaintiff $10,562.00 for attorneys' fees and costs of $363.46 pursuant to both California Family Code § 271 and California Family Code § 3020, as separate and independent grounds, as the prevailing party in this Adversary Proceeding.

The court shall issue a separate order granting the motion and awarding the attorneys' fees.

This Memorandum Opinion and Decisions constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52 and Federal Rule of Bankruptcy Procedure 7052.

Dated: May **7** , 2014

RONALD H. SARGIS, Judge
United States Bankruptcy Court

40

# Instructions to Clerk of Court
## Service List - Not Part of Order/Judgment

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below.  The Clerk of Court will send the Order via the BNC or, if checked _____, via the U.S. mail.

       **Debtor**(s), **Attorney for the Debtor**(s), **Bankruptcy Trustee** (if appointed in the case), **and** __XX___ Other Persons Specified Below:

Office of the U.S. Trustee
Robert T. Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814

Thomas P. Hogan
1207 13th Street, #1
Modesto, CA 95354

Lisa R. Flores
1207 13th Street, #1
Modesto, CA 95354

Robert D. Rodriguez
429 13th Street
Modesto, CA 95354